AO 243
REV 6/82

MOTION UNDER 28 USC § 2255 TO VACATE SET ASIDE OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

RECEIVED AND FILED
2005 APR 19 PM 1:36

| United States District Court | District District of Puerto Rico |
|---|---|
| Name of Movant Carlos Gutierrez-Narranjo | Prisoner No. U.S. DIST. Docket No. 31804-C8H 97-CR-0271 (HL) |

Place of Confinement
F.C.I. Fort Dix, Unit 5751, P.O. Box 2000, Fort Dix, New Jersey 08640-0902

(include name upon which convicted)

UNITED STATES OF AMERICA    V.    CARLOS GUTIERREZ-NARRANJO

(full name of movant)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack U.S. District Court, 150 Carlos Chardon Avenue, San Juan, Puerto Rico 00904 (782-772-3000)

2. Date of judgment of conviction Sentence: March 24, 2004

3. Length of sentence 216 Months

4. Nature of offense involved (all counts) Conspiracy to traffic controlled substances, violation of 21 U.S.C. § 846; Forfeiture of criminally derived pro-ceeds, violation of 21 U.S.C. § 853(a)

5. What was your plea? (Check one)
   (a) Not guilty ☐
   (b) Guilty ☒
   (c) Nolo contendere ☐

If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. Kind of trial: (Check one)
   (a) Jury ☐
   (b) Judge only ☒

7. Did you testify at the trial?
   Yes ☐ No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☐ No ☒

RECEIVED & FILED
05 APR 25 AM 9:26
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.

AO 243
REV 6/82

9. If you did appeal, answer the following:

    (a) Name of court _____

    (b) Result _____

    (c) Date of result _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☐ No ☐

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court _____

       (2) Nature of proceeding _____

           _____

       (3) Grounds raised _____

           _____

           _____

           _____

           _____

       (4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

       (5) Result _____

       (6) Date of result _____

    (b) As to any second petition, application or motion give the same information:

       (1) Name of court _____

       (2) Nature of proceeding _____

           _____

       (3) Grounds raised _____

           _____

           _____

           _____

           _____

AO 243
REV 6/82

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result_____

(6) Date of result _____

(c) As to any third petition, application or motion, give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

_____

(3) Grounds raised_____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐
(5) Result _____
(6) Date of Result _____

(d) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc.        Yes ☐ No ☐
(2) Second petition, etc.    Yes ☐ No ☐
(3) Third petition, etc.      Yes ☐ No ☐

(e) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

_____

12. State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

AO 243
REV 6/82

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: Defendant Was Unconstitutionally Assessed As A Leader/Organizer Of The Conspiracy:

Supporting FACTS (tell your story *briefly* without citing cases or law: The Defendant was an admitted supplier of controlled substances; however, he did not run any organization, but served purely as a jobber to customers who called him. His culpability for his actions was fully taken into account by the drug quantity liability that he received and embellishments like leader/organizer are un-constitutional pursuant to United States v. Booker. Memorandum.

B. Ground two: Defense Counsel Was Constitutionally Ineffective For Preventing The Forfeiture Of Mr. Gutierrez's Bayline And Apache Cabin Cruisers:

Supporting FACTS (tell your story *briefly* without citing cases or law): While serving his sentence, Mr. Gutierrez has been informed that his two boats have been taken. Other than family, Mr. Gutierrez has not re-ceived any notice; he can only presume that, if lawful at all, the seizure was effected through notice to counsel. Taking the boats is per se illegal, as shown on Memorandum. Counsel would be constitutionally ineffective in allowing this punishment.

C. Ground three: _____

Supporting FACTS (tell your story *briefly* without citing cases or law): _____

_____

_____

_____

_____

AO 243
REV 6'82

D. Ground four: _____

Supporting FACTS (tell your story *briefly* without citing cases or law): _____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

Counsel was constitutionally ineffective and there have been sub-
stantive changes in the controlling jurisprudence.

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐ No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing Francisco Acevedo-Padilla, Esquire, Edif. Assoc.
de Maestros, Suite 603, 452 Ponce de Leon Ave., Hato Rey, PR 00918

(b) At arraignment and plea _____ Same

(c) At trial _____ Same

(d) At sentencing _____ Same

AO 243
REV 6/82

(e) On appeal _____ N/A _____

(f) In any post-conviction proceeding _____ N/A _____

(g) On appeal from any adverse ruling in a post-conviction proceeding _____ N/A _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☒ No☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

March 25, 2005
(date)

*Carlos Gutierrez Narazo*
Signature of Movant

Carlos Gutierrez-Narranjo, Pro Se

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS GUTIERREZ-NARANJO,
        Petitioner

v.

UNITED STATES OF AMERICA,
        Respondent

**MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
PURSUANT TO 28 U.S.C. § 2255**

Petitioner, Carlos Gutierrez, Pro Se, respectfully moves to vacate, set aside, or correct the 216 month sentence imposed in United States v. Gutierrez-Naranjo, 97-CR-0271 (HL), in this Court on March 24, 2004. Mr. Gutierrez makes this submission on Thursday, March 31, 2005, within the one year statute of limitation under the A.E.D.P.A. before this conviction became final from not filing for notice of appeal. The time to the limitation has been necessary in order to incorporate latest arguments with respect to United States v. Booker, 125 S.Ct. 738 [2005].

On this Petition, Mr. Gutierrez raises two issues. First, he argues that his enhancement as an alleged "leader/organizer" of the criminal conspiracy is unconstitutional (1) for the outright criminalization of a status or conduct by a non-legislative agency and (2) for being duplicative punishment to that imposed for drug quantity alone. Second, he argues that he has been punished by the seizure or forfeiture of his boats, to wit, two motor boats of 24 and 21 foot length, respectively, as more fully described herein, with no Due Process.

## SUMMARY OF THE RELEVANT FACTS OF THE CASE

Mr. Gutierrez participated in a large scale drug importation business during the time alleged in the indictment.  In this conspiracy, Mr. Gutierrez acted as something of a high-quantity broker of durgs; but he was not an importer himself nor did he run any organization to sell the drugs himself.  As the Government's investigation showed by wiretaps, Mr. Gutierrez's business was mostly "telephone work," i.e., reporting offerings of drugs, seeking offerings of drugs, asking for monies owed, etc.  As in all drug conspiracies, the scale of dealing was relative.

While Mr. Gutierrez acknowledged that his cocaine dealing was sometimes in tens of kilograms, it appears from the listing of overt acts in the Indictment that all the Government's references to heroin have ben inflated from eighth's of a kilogram (worth $2,500) to something worth $25,000.  Likewise, as this Court has observed in the wiretap example of co-defendant Rivera-Rosario, the cocaine quantities have been serious inflated in many instances.

Regardless, Mr. Gutierrez does not quibble over his Base Offense Level, but rather over his substantive ground for relief is over his enhancement as a manager/supervisor of the conspiracy (vide infra) and the drug quantities should not be used as excuse not to adjust this sentence to what the law requires.

2

CAUSE AND PREJUDICE

A Motion under 28 U.S.C. § 2255 is a complete equivalent for a Petition For Writ of Habeas Corpus. Relief is available under Section 2255 only if relief would also be available under the Writ. Hill v. United States, 368 U.S. 424, 427 [1962]. The grounds justifying relief under § 2255 are limited. An error that may justify reversal on direct appeal will not necessarily support a collateral attack upon a final judgment. United States v. Addonzio, 442 U.S. 178, 184 [1979].

The Supreme Court has noted the limits of relief available under Section 2255 as follows:

> [U]nless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited.

Id. The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted "a fundamental defect which inherently results in a complete miscarriage of justice." Id. at 185. Similar limitations, of course, apply with respect to claimed factual errors.

The § 2255 litigant must, therefore, show cause and prejudice United States v. Frady, 456 U.S. 152, 165 [1982]. Cause is the statement of unconstitutional reason why the objection or defense was not made in the original proceeding. Prejudice is the constitutionally dimensioned harm suffered by the defendant. In today's jurisprudence, constitutional prejudice is satisfied by any showing of unwarranted imprisonment. Glover v. United States, 531 U.S. 198, 202 [2001].

3

## INEFFECTIVE ASSISTANCE OF COUNSEL AS CAUSE

The Sixth Amendment right to effective assistance of defense counsel forms the foundation to the American justice system. As the Supreme Court has noted, it is by far the most significant of a defendant's constitutional rights because, as the ultimate practical matter, it is the means by which the defendant is asserting all of his other rights in the criminal proceeding. United States v. Cronic, 466 U.S. 648, 652 [1984].

The Courts have been given a two prong test for establishing the lack of constitutionally effective representation of counsel. Strickland v. Washington, 466 U.S. 668, 687 [1984]. First, the petitioner must establish that counsel's performance fell below an objective standard of reasonableness; second, the petitioner must demonstrate that, but for the deficiencies, the result of the proceeding would have been different, "to a reasonable probability."

> A reasonable probability is a probability
> sufficient to undermine confidence in the
> outcome [of the criminal proceeding].

Strickland, 466 U.S. at 694.

What a reviewing Court most commonly looks for is some "breakdown in the adversarial process that renders the result unreasonable." Id. at 687; United States v. Cronic, 466 U.S. at 659 (question on habeas review is whether counsel's representation failed to subject the critical elements of the prosecution's proof to meaningful adversarial testing).

To this standard, the Petitioner makes his showings as required.

4

I.    THE SUPREME COURT DECISION IN UNITED STATES V. BOOKER MAKES
      THE DEFENDANT'S MANAGER ENHANCEMENT PER SE UNCONSTITUTIONAL:

     For his sentencing, Mr. Guttierez was held responsible for all
the quantity of drugs in the conspiracy and then enhanced two
points for being an alleged manager of the illegal activity.    This
enhancement is now recognizable as unconstitutional for multiple
reasons following United States v. Booker, 125 S.Ct. 738 [2005].
First, Booker un-equivocally establishes that the status of leader/
supervisor/manager/organizer is each legally an aggravating element
of the offense charged in the indictment and to which Mr. Gutierrez
pled guilty.    Creation of criminal elements is a primary legis-
lative function that may not be delegated.    United States v. Wilt-
berger, 5 Wheat 76, 96, 5 L.Ed. 42, 43 [1820]; United States v.
Halseth, 342 U.S. 277, 280 [1952].    The creation of a primary
offense by the United States Sentencing Commission was a per se
violation of the separation of powers.

     The supervisor enhancement is also an insidious form of double
counting.    The reason that the person is blamed for all the drug
quantity or for the greater amount of drug quantity is his position
in the conspiracy.    The points added for leader/organizer cannot be
justified where it is the made the legal equivalent of grossly
greater quantities of drugs that are not present in the conspiracy
at all.    In this instance, Mr. Gutierrez was moved into the
infinite zone of the Sentencing Guideline table.    The inequitable
nature of such enhancement has been substantially addressed by
Judge Young in Green v. United States, 346 F.Supp.2d 259 (D. Mass.
2004), which Mr. Gutierrez adopts in full.

     Most significantly, the enhancement violates Due Process.

. The Principles Derived From <u>United States</u> v. <u>Booker</u>, Part I, Demand That This Sentence Be Corrected For Substantive And Structural Error:

<u>United States</u> v. <u>Booker</u>, <u>Part I</u>, has ended the legal stone-walling of principles which apply to "elements of the offense" as somehow not applying to the facts used to determine the Federal Sentencing Guideline Offense Level. Regardless of the analytical path used by <u>Blakely</u> v. <u>Washington</u>, 124 S.Ct. 2531 [2004], and <u>United States</u> v. <u>Booker</u>, 125 S.Ct. 738 S.Ct. 738 [2005], to decide the questions presented, the true question decided was the responsibility of the American criminal trial to protect defendants so that punishment is only inflicted for guilt adjudicated as guilt, i.e., beyond a reasonable doubt for every element essential to the crime punished. Therefore, the issues decided in <u>Blakely</u> and <u>Booker</u> transcend the procedural rights of the defendant.

Both these cases hold that the characterization of facts which increase a defendant's maximum Guideline sentence is to be as "the functional equivalent of elements." <u>Blakely</u>, 124 S.Ct. at 2537. This statement has been used as a dilution; such facts <u>are</u> elements.

> [W]he the term sentencing enhancement is used to describe an increase beyond the maximum authorized statutory sentence [for the conviction alone], it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an "element' of the offense.

<u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466, 486 [2000]. And, in <u>R.L.C.</u> v. <u>United States</u>, 503 U.S. 291, 299 [1999], the Supreme Court ruled that the United States Sentencing Guidelines were <u>de facto</u> statutes

because the mandate requiring the District Courts to use the Guidelines was both mandatory and legislative.

> [A] statute is a statute, whatever its label.

R.L.C., 503 U.S. at 305 n. 5. Thus, there can really be no dispute following United States v. Booker that the Constitutional mandate and the legislative mandate make any fact increasing the maximum Guideline penalty possible into a legal "element" by definition.

An element is defined as "each component of the actus reus, the causation, the mens rea, any grading factor, and the negative of any defense." Blackstone Law Dictionary, 8th Ed., p. 558, quoting the Model Penal Code, § 1.13(9). In any statutory offense, the element of definite penalty is added to the Common Law components. Evans v. United States, 333 U.S. 483, 486 [1948] (declaring the alien harboring statute a nullity for lack of express penalty element).

It would be incredible for jurists to play with the definition, e.g., using "functional equivalent" to disguise what are really separate crimes and warping defendants' claims for relief into purely some procedural "gripes."

> "When I use a word," Humpty Dumpty said in a rather scornful tone, "it means what I choose it to mean - neither more nor less."
>
> "The question is," said Alice, "whether you can make ["element"] mean so many different things?"
>
> "The question is," said Humpty Dumpty, "which is to be master - that's all!"

L. Carroll, Through The Looking Glass. An element is an "element,"

period.

The Supreme Court has absolutely resolved the Fifth and Sixth
Amendment procedural issues over the treatment of "any fact" which
increases the maximum sentence possible throughout the whole legal
range from State and Federal statutes to State and Federal sentenc-
ing guidelines. The appearance is that the Court's primary interest
was in resolving judicial sentencing power, not the justice due
guideline-sentenced defendants. But the Supreme Court's identifi-
cation of the procedural protection demanded for a defendant under
the Fifth and Sixth Amendments, combined with the definition of
"element," demonstrates that the protection of jury trial is requir-
ed for every element-fact used at sentencing. In fact, the decision
in Booker reveals that the Government has been convicting defendants
for lesser offenses or other offenses entirely for the past seven-
teen years, then unconstitutionally piling on the unproved elements
at sentencing.

When facts are identified as essential elements to the actual
crime being sentenced, different legal consequences attach to the
treatment of those facts than apply to "mere evidence" at sentencing.
Richardson v. United States, 526 U.S. 813, 817 [1999] (elements must
receive the full panolopy of constitutional protections).

> "A trial judge is prohibited from entering a
> judgment of conviction [i.e., deciding an
> element] or directing the jury to come forward
> with such a verdict . . regardless of how over-
> whelming the evidence may point in that direc-
> tion."

United States v. Martin Linen Supply Co., 430 U.S. 564, 572-73

[1977].  Sentencing on unproved elements is per se uncosntitutional.
Both pre- and post-Booker, a sentencing court is acting unconstitu-
tionally when it sentences for acquitted criminal conduct, dismissed
criminal conduct, relevant criminal conduct, and obstruction.  Pre-
Booker, all characteristics which increased the Guideline maximum
sentence were elements, and were sentenced unconstitutionally when
sentenced to only a preponderence of evidence standard as found by
the judge.

    The Jones/Apprendi/Blakely/Booker decisions, therefore, were
by themselves half-treatments of the legal controversy actually pre-
sent in the Petitioners' complaints.  But the legal treatment per-
formed in each forces the absolute definition of the respective
sentencing facts as elements.  This recognition in turn makes the
decisions substantive in nature and the procedural protection can
be identified as structural.

    Before any sentencing, the Government has the unquestionable
duty to prove the essential elements of the accused crime beyond a
reasonable doubt.  The validity of the proof is enforced by the
Courts themselves.  The jurisdiction to sentence for element-cate-
gory facts demands that trial

> "be the prime instrument for reducing the risk
> of convictions resting on factual error.  The
> [trial] standard provides concrete substance
> for the presumption of innocence - that 'bed-
> rock and elementary' principle whose 'enforce-
> ment lies at the foundation of the administra-
> tion of justice in the criminal law.'"

In re Matter of Winship, 397 U.S. 358, 364 [1970] (citation omitted).

9

The point is that the protection of the standard of proof, like the protection of jurisdiction, is never the Government's nor the defendant's to dictate, nor is it a requirement which either side can acquiesce or waive.

> "The prosecution's burden of proof to the jury of every element beyond a reasonable doubt is not lifted by a defendant's tactical decision not to contest an element of the offense."

Estelle v. McGuire, 502 U.S. 62, 72 [1991]. The standard of proof is a structural element of the trial procedure.

Without satisfaction of the burden of proof in hand, no court can claim the jurisdiction to sentence for the unproven facts.

> "When a defendant is about to be deprived of a liberty of the first kind, namely his physical liberty, the fundamental reason for the extent of the deprivation of that constitutionally vested liberty interest must be his adjudication of guilt for the offenses alleged, not the offenses remaining unproven to the jury."

Wilbur v. Malloney, 421 U.S. 684, 697-98 [1974] (emphasis added).

With Winship Doctrine, which "establishe[d] so fundamental a substantive constitutional standard, must require that the fact-finder will rationally apply that standard to the facts in evidence." Jackson v. Virginia, 443 U.S. 307, 317 [1979]. A jury finding a defendant guilty for an offense where an element can be demonstrated to remain unproven will be reversed. Therefore, in applying the verdict itself, the same structural protection inherent in verdict cannot be diluted!

The failure of the Courts to function as neutral Tribunals in

historical sentencing has been a structural defect of the highest
order. On a direct appeal, the denial of the right to a unanimous
jury verdict on _every_ essential element has always been more than
just error for harmless error review.

> "Our Constitution, and our criminal justice
> system, protect other values besides the re-
> liability of the guilt or innocence deter-
> mination."

Rose _v_. Clark, 478 U.S. 570, 588 [1986] (Stevens, J., concurring).
Constitutional protections are equal in dignity; but structural
protections are also jurisdictional in character for failure to
maintain the Tribunal. Johnson _v_. Zerbst, 304 U.S. 458 [1938] and
Ibid.

On collateral review, a substantive constitutional error of
definition, i.e., that a sentencing fact has actually been an
"element," when judicially identified, must be corrected retroac-
tively. E.g., Bunkley _v_. Florida, 538 U.S. 835 [2003] (evolving
definition of "illegal blade length" must be given retroactive
effect on collateral review to determine definition that applied at
the time of the offense). The facts of this sentencing were all
legally defined elements when they were legally treated as mere
evidence. Accordingly, it was both structural and substantive error
for them to be so treated and there is no question that the errors
now described are fully cognizable on collateral review. Davis _v_.
United States, 417 U.S. 333, 342 [1972].

The relief-portion of the Booker/Fanfan decision admits of two means to purportedly alleviate the Sixth Amendment unconstitutionality of applying the United States Sentencing Guidelines to criminal sentencings. United States v. Booker/Fanfan, 125 S.Ct. ___, ___ [2005]. Justice Breyer rejects the first alternate, i.e., to require that the Guideline facts be proved beyond a reasonable doubt, as contrary to the intent of Congress. Id. at    . He therefore chooses the second alternate, to declare 18 U.S.C. § 3553(b)(1) and 18 U.S.C. § 3742(e) unconstitutional to the extent that they have made Guideline sentencing mandatory.

The problem for this approach is that it is ex post facto for altering the Blakely-clarified "rules of evidence, and receiv[ing] less evidence [ . . . ], than the law required at the time of the commission of the offense, in order to convict the offender." Calder v. Bull, 3 Dall. 386, 390, 1 L.Ed. 648 [1798]. Regardless of "labels," it is now legally established that the sentencing facts beyond the conviction simpliciter are further elements of an aggravated offense wherever they increase a penalty. Blakely v. Washington, 124 S.Ct. 2531, 2537 [2004]. As such, they were never to be proved only to a preponderance standard to a judge; instead, sentencing facts were to receive the full constitutional protection of elements. Richardson v. United States, 526 U.S. 813, 817 [1999] (different legal consequences attach to facts which are "elements" as compared to facts which are "mere evidence"); Mullaney v. Wilbur, 421 U.S. 684, 697-98 [1970] (unanimous holding extending the protection of Winship to facts which go to the determination of length of

sentence), cited in <u>Monge</u> <u>v</u>. <u>California</u>, 524 U.S. 721, 737 n. 7
[1998].

There is nothing that inherently prevented Congress from en-
acting a sentencing scheme which provided defendants with Sixth
Amendment protection for sentencing facts in general.  Now we have
learned, after years of misuse, that this is exactly what Congress
did do.  <u>Blakely</u> <u>v</u>. <u>Washington</u>, <u>supra</u>.  But if the error was for
Congress to give away more than it intended by its choice of making
the Sentencing Guidelines mandatory, that was not a "mistake" in
the sense of being prohibited by some Constitutional principle.
It was simply a mistake of translating Congressional intent into
exact law that effected that intent and no other.  This type of
error does not entitle either Congress or the Supreme Court to take
away anything that had been genuinely enacted.

Congress frequently blithers a law and finds itself bound by
unforeseen and unintended consequences.  E.g., <u>Deal</u> <u>v</u>. <u>United</u> <u>States</u>,
508 U.S. 129 [1993] (<u>fifteen</u> <u>years</u> <u>after</u> <u>enactment</u> of 18 U.S.C. §
924(c), finding that predicate "recidivist-qualifying" § 924(c)
conviction can be inside the same case under adjudication for pur-
poses of imposing twenty year consecutive sentences to subsequent
§ 924(c) counts of indictment, and requiring Deal to be sentenced
to 105 years).  In reaching conclusions like that in <u>Deal</u>, the
Supreme Court has consistently held that a law means what it says.
<u>Deal</u>, <u>supra</u>; <u>Salinas</u> <u>v</u>. <u>United</u> <u>States</u>, 522 U.S. 52, 57 [1994] (first
duty of reviewing court is to analyze the plain language of the
statute and enforce its plain meaning unless it is clearly unconsti-
tutional to do so.  The statutes do not become unconstitutional for

not satisfying the intent of Congress

> "Statutes should be construed to avoid consti-
> tutional questions, but this interpretative
> canon is not a license for the judiciary to
> rewrite language enacted by the legislature."

United States v. Albertini, 472 U.S. 675, 780 [1985], quoted in
Salinas, supra, 522 U.S. at 59-60.

Justice Breyer admits that he did not have to declare 18 U.S.C.
§ 3553(b)(1) unconstitutional in order to solve the application of
Guidelines problem. Booker/Fanfan, 125 S.Ct. at       . Choosing
the intent of Congress is no legitimate alternative unless compel-
led by a defect in statute of Constitutional dimension.

In his decision, Justice Breyer fails to address, let alone
demonstrate, any compulsion of Constitutional magnitude to warrant
deviating from the mandate inherent in having created the Sentencing
Guidelines as law. R.L.C. v. United States, 503 U.S. 291, 299
[1992] (the federal sentencing guidelines are statutory because the
command to use them is both mandatory and statutory).

> "[O]nly the most extraordinary showing of con-
> trary intentions in the legislative history
> will justify a departure from [statutory]
> language."

Albertini, supra, 472 U.S. at 680, quoting Garcia v. United States,
469 U.S. 70, 75 [1984]; Ardestani v. I.N.S., 502 U.S. 129, 135
[1991] (courts may deviate from the plain language of a statute
only in "rare and exceptional circumstances"). In the present cir-
cumstance, it would be directionally violative of the rule of lenity

14

to read the plain Sixth Amendemnt protection owed a defendant out
of the statutory scheme for the sake of a non-executed intent of
Congress. Kolender v. Lawson, 461 U.S. 352,    [1983]. It is
violative of Constitutional Due Process for the Court to, in effect,
repeal a Constitutional protection without the change having ex post
facto effect. See Bouie v. City of Columbia, 378 U.S. 347, 354
[1964] (Ex Post Facto Clause is enforcable on the Courts through
the Due Process Clause of the Fifth Amendment).

Regardless, for the whole time that the Sentencing Guidelines
were intact, their Constitutional protections were self-executing.
The Constitution enforces itself. City of Boerne v. Flores, 521
U.S. 507, 524 [1991] (the first eight Amendments of the Federal
Constitution set forth self-executing prohibitions on governmental
actions). This being so, it is all the defendants whose offenses
occurred between November 1, 1987 and January 12, 2005 who are pro-
tected, and it is the new defendants since January 12 who are out in
the unconstitutional cold. Weaver v. Graham, 450 U.S. 24, 28-29
[1981] (The ex post facto clause requires that legislative enactments
"permit individuals to rely on their meaning until explicitly
changed.").

While the Booker "construction is valid for the future, it may
not be applied retroactively, any more than a legislative enactment
may be, to impose criminal penalties for conduct committed at a
time when it was not fairly [proven] to be criminal." Literating
Bouie, 378 U.S. at 362, to the evidence prong of of ex post facto
clause. This sentence must be vacated and the defendant resentenced
without enhancements above the offense level of the conviction.

II.   DEFENSE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR NOT
      PREVENTING THE FORFEITURE OF MR. GUTIERREZ'S BAYLINER BOATS:

After sentencing, Mr. Gutierrez has been informed that two

boats which he kept at the marina had been taken, i.e., a 24 foot

Bayliner cabin cruiser and a 21 foot Bayliner cabin cruiser.  Mr.

Gutierrez's forfeiture agreement with the Government was for for-

feiture of his interest in his condominium residence, exclusively.

By separate Affidavit, Mr. Gutierrez avers that these boats were

never used for drug trafficking, they were never mentioned in nego-

tiation with the Government, and he has never been informed of any

substitute asset obligation.  The Defendant's plea agreement wrong-

ly categorizes forfeiture assets as any money being involved and/or

derived from the commission of the offense charged in Count One of

the indictment, pursuant to 28 U.S.C. § 853(a).

> "An amount of money subject to forfeiture, which
> amount shall be determined by the Court at a sepa-
> rate evidentiary hearing to be held prior to the
> act of sentencing, . . . "

This is no proper characterization of the statutory ambit.  Vide

infra.

The boats were valuable property and could represent assets of

$50,000 or so, if not dissipated.

A.  Discussion:

The provisions of 21 U.S.C. § 853(p), forfeiture of substitute

property, dictate how and when property unrelated to the underlying

offense may become forfeitable to the Government.  Subsection (a)

itself includes

16

(1)    any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of the violation; or

(2)    any of the person's property used, or intended to be used, in any manner or part to commit, or to facilitate the commission of, such violation.

Under § 853(p), if any of the property described for subsection (a), as a result of any act or omission of the defendant (1) cannot be located, (2) has been transferred or disposed of to a third party, (3) has been placed outside the jurisdiction of the court, (4) has been substantially diminished in value, or (5) has been comingled with other property  and cannot be divided without great difficulty, alternate assets may be identified and presented to the court for substitute forfeiture.  None of these conditions obtain here.

Mr. Gutierrez agreed to the forfeiture of his interest in the his condominium residence.  There was no dollar value assigned, by indictment or plea agreement.  But the valuation was approximately $150,000 in fact.  This was the extent of Defendant's liability and it is questionable whether his criminal sentence of imprisonment really received any concession from concession of the property.

Mr. Gutierrez has no recollection of signing away his rights to the subject boats, nor has he received any notice of forfeiture or seizure.

To the extent that substitute property of the Defendant may have become forfeitable upon the entry of a judgment of an amount of money subject to forfeiture per the plea agreement, only the Court could enter such a judgment.  Flat money judgment forfeitures, however, except those relating to specific tainted funds, are not authorized by the statute.  United States v. Croce, 334

17

F.Supp.2d 781 (E.D.Pa. 2004), amended on remand, 345 F.Supp.2d 492
(E.D.Pa. 2004) (dealing with money laundering forfeiture, but
equally applicable to 21 U.S.C. § 853).

Wherefore, since this taking has occurred under defense
counsel's watch, to the extent that it has been effected in viola-
tion of both procedural and substantive law, counsel was constitu-
tionally ineffective. Cause may also be satisfied by the plain
lack of due process at all. To the extent that forfeiture is
sentence in this case, Mr. Gutierrez prays that the craft will be
returned to him in substantially the same condition as when seized
or that he be compensated with fair market value at that time.

### CONCLUSION

Mr. Gutierrez is willing to abide by the portions of his plea
agreement which are lawful; but the challenged enhancement is not
just illegally applied, it is also possibly a legal nullity. The
Court should also recognize that this case is one which possessed
rampant exaggeration of the drug quantities alleged to be true.
In the indictment text alone, paragraphs 52, 53, 55, 58, 75, 85,
89, 90, 91, 92, 96, and 97 are all references to "eighth's" of a
kilogram of cocaine and not full kilograms as is being described
in the indictment. Paragraphs 79 to 81 are references to a possible
marijuana purchase; 25 kilograms was the trial load. So this is
not cocaine despite the similar units of weight. And the 100 kilo-
grams of cocaine was one of many speculative deals that never came
off. The quantities dealt are more accurately reflected in the
discussions of payments to suppliers, i.e., $280,000 and $400,000.
At a usual price of $20,000 to $25,000 per kilogram for reliable

18

quality cocaine (¶'s 35 and 78, for example), the Court would obtain a much more accurate indication of the true drug quantities involved (14 and 20 kilograms in these instances).

The Defendant should be allowed to proffer for the safety-valve departure if the managerial enhancement is void; likewise, if the Government cannot pursue a reimposition of the managerial enhancement, Mr. Gutierrez should likewise be allowed to proffer for additional relief.

Finally, the Court should require the Government to conduct an inquiry if it proves out that the subject small craft have not been forfeited.  The boats are both gone and Mr. Gutierrez has no explanation.

Wherefore, the Writ should issue on both issues raised and the Court should conduct whatever proceedings in advance of the issauance of the Writ as it deems necessary to determine the truth of the Grounds for Relief.

Respectfully submitted,

Carlos Gutierrez-Naranjo, Pro Se
F.C.I. Fort Dix, Unit 5751
P.O. Box 2000
Fort Dix, New Jersey 08640-0902